*United States v. Matos*

## UNITED STATES COURT OF APPEALS
## FOR THE SECOND CIRCUIT

August Term 2024

(Argued: February 20, 2025          Decided: August 13, 2026)

No. 22-1561

_____

UNITED STATES OF AMERICA,

*Appellee,*

-v.-

SAMUEL MATOS,

*Defendant-Appellant.*[*]

_____

Before:      CABRANES, LIVINGSTON, and NARDINI, *Circuit Judges.*

Defendant-Appellant Samuel Matos ("Matos") appeals from a judgment entered on July 18, 2022, in the United States District Court for the Northern District of New York (Suddaby, *J.*) convicting him of violating 21 U.S.C. §§ 841(a)(1) and 846. Matos pled guilty pursuant to a plea agreement in which he agreed, *inter alia*, not to challenge a sentence of incarceration of 135 months or less. The district court sentenced Matos principally to 100 months' imprisonment,

---

[*] The Clerk of Court is respectfully directed to amend the case caption as indicated above.

1

thereby triggering the appeal waiver. Matos now seeks to challenge the district court's calculation of his criminal history category under the U.S. Sentencing Guidelines and argues that his sentence was substantively unreasonable. We decline to consider these challenges, which are barred by Matos's valid appeal waiver.

Matos also challenges the district court's imposition of two conditions of supervised release that were not included in his Presentence Investigation Report or read at sentencing but appear in the district court's written judgment. We first hold that the district court did not err in its pronouncement of Matos's sentence because it specifically incorporated the conditions by reference to a standing order in effect in the Northern District of New York at the time of sentencing. We then conclude the district court erred by failing to conduct an individualized assessment in imposing the two challenged conditions. We hold, however, that the error was harmless because the court's reasoning is self-evident in the record.

Accordingly, Matos's appeal is **DISMISSED** in part and the judgment of the district court is **AFFIRMED**.

FOR APPELLEE:                                THOMAS R. SUTCLIFFE (Nicolas Commandeur, *on the brief*), Assistant United States Attorneys, *for* John A. Sarcone III, First Assistant United States Attorney, Northern District of New York, Syracuse, NY.

FOR DEFENDANT-APPELLANT:        DANIEL S. NOOTER, Washington, DC.

DEBRA ANN LIVINGSTON, *Circuit Judge*:

Defendant-Appellant Samuel Matos ("Matos") appeals from a judgment entered on July 18, 2022, in the United States District Court for the Northern District of New York (Suddaby, *J.*) convicting him of violating 21 U.S.C. §§ 841(a)(1) and 846 in connection with his participation in a drug trafficking

2

organization ("DTO") in Syracuse, New York. Matos entered into a plea agreement with the government pursuant to which he waived, *inter alia*, his right to appeal any sentence of incarceration of 135 months or less. The district court sentenced Matos principally to 100 months in prison and a five-year term of supervised release, thereby triggering the plea agreement's appeal waiver.

On appeal, Matos argues both that the district court procedurally erred by miscalculating his criminal history category under the U.S. Sentencing Guidelines ("Guidelines") and that it imposed a substantively unreasonable sentence. Recognizing that the appeal-waiver provision of his plea agreement forecloses these arguments, Matos urges the court to adopt and apply a miscarriage-of-justice exception to our long-established presumption that valid appeal waivers are enforceable.[1] Following the Supreme Court's decision in *United States v. Hunter*, 146 S. Ct. 1702 (2026), we conclude that an appeal waiver is unenforceable when it would result in a miscarriage of justice, but that Matos has not alleged any error to bring his case within the ambit of this "hard-to-meet" standard. *Id.* at 1714. Whatever else the miscarriage-of-justice exception to an otherwise valid appeal

---

[1] Although we have previously suggested that a miscarriage-of-justice limitation on the enforceability of appeal waivers may be appropriate in some cases, *see Cook v. United States*, 84 F.4th 118, 125 n.4 (2d Cir. 2023), we have never applied it or defined its scope.

3

waiver may cover, it does not extend to run-of-the-mill challenges to a district court's allegedly erroneous calculation of a Guidelines range, or to other such Guidelines errors. Accordingly, we hold that Matos's procedural and substantive challenges to his sentence are barred by his appeal waiver.

Matos also challenges the imposition of two conditions of supervised release that were not included in his Presentence Investigation Report ("PSR") or read aloud at sentencing, but which appear in the district court's written judgment.[2] We first conclude that the district court did not violate Matos's right to oral pronouncement of his sentence because the court specifically incorporated the conditions by reference to General Order #23, a standing order in place in the Northern District at the time of sentencing. And though we agree with Matos that the district court erred in failing to provide an individualized assessment of the need for the two conditions he challenges, we hold the error was harmless because "the district court's reasoning is 'self-evident in the record.'" *United States v. Betts*, 886 F.3d 198, 202 (2d Cir. 2018) (quoting *United States v. Balon*, 384 F.3d 38, 41 n.1 (2d Cir. 2004)).

---

[2] The appeal waiver in Matos's plea agreement covers any challenge "to a term of supervised release within the maximum permitted by law" but does not reference the conditions of supervised release. App'x at 52–53. Accordingly, Matos "did not waive his right to appeal the *conditions* of supervised release." *United States v. Arguedas*, 134 F.4th 54, 66 (2d Cir. 2025) (emphasis in original).

4

Accordingly, we **DISMISS** Matos's appeal in part and **AFFIRM** the judgment of the district court.

## BACKGROUND

Beginning in May 2020, Matos and others were members of a DTO operating in and around Syracuse, New York. Matos performed several functions in the organization. He identified a heroin supplier for the DTO in New York City, arranged an introductory meeting with the supplier, and travelled to New York City to obtain the heroin. He also coordinated among the DTO's members to pool the money used to purchase drugs. Matos played a further role in managing the DTO's daily operations, providing instructions to associates on how to manage and distribute drugs. At one point during the conspiracy, Matos arranged to have approximately two kilograms of cocaine shipped from Puerto Rico to one of his associates in Syracuse. Investigators intercepted the shipment before its arrival. An ensuing search of Matos's residence revealed over a thousand bags containing a total of 42.5 grams of heroin. As a result of his role in the DTO, Matos personally received $112,650 in proceeds.

On December 10, 2020, a federal grand jury in the Northern District of New York indicted Matos for conspiracy to distribute and to possess with intent to distribute controlled substances, specifically 100 grams or more of heroin and 500

grams or more of cocaine, in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(B), and 846, and possession with intent to distribute a controlled substance, namely an unspecified quantity of heroin, in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(C).

Matos pled guilty pursuant to a plea agreement. In the plea agreement, Matos agreed, *inter alia*, to "waive[] (give[] up) any and all rights, including those conferred by 18 U.S.C. § 3742 and/or 28 U.S.C. §§ 2241 and 2255, to appeal and/or collaterally attack . . . [a]ny sentence to a term of imprisonment of 135 months or less." App'x at 52–53. The plea agreement also warned that:

> Any estimate of the defendant's offense level, criminal history category, and sentencing guidelines range provided before sentencing is preliminary and is not binding on the parties to this agreement, the Probation Office, or the Court. Until the Probation Office has fully investigated the defendant's criminal history, it is not possible to predict with certainty the defendant's criminal history category and, in some cases, the defendant's offense level.

*Id.* at 56.

At Matos's guilty plea hearing the district court asked the government to outline its projected Guidelines sentencing range, which had not been included in the plea agreement. The government responded:

> Obviously, our projected guideline range calculation is only an estimate based on the information we currently have. Obviously, any

6

error in our calculation or in the information that we have would not serve as a basis for the defendant to withdraw his plea. But based on the information we have, based on the counts of conviction, a criminal history category of II, and an adjusted offense level of 30, the defendant's estimated guideline range without acceptance is 108 to 135 months, with acceptance is 78 to 97 months.

*Id.* at 37–38. The district court then told Matos that it would not "be able to determine exactly what the guidelines are in [his] case until after probation has completed the Presentence Report." *Id.* at 38. The district court also confirmed Matos understood the waiver provision of the plea agreement meant he "may not appeal [his] sentence or otherwise challenge or collaterally attack [his] sentence if . . . sentence[d] . . . to 135 months or less." *Id.* at 40–41. Matos acknowledged that he understood and pled guilty.

The Probation Office concluded in the PSR that Matos's adjusted offense level was 27 and, contrary to the government's prediction at the plea hearing, that Matos had a criminal history category of VI. Matos raised several objections to the PSR's Guidelines calculation including, as relevant here, that the Probation Office had inaccurately scored four of Matos's prior convictions.

Specifically, Matos challenged scoring these offenses based on the maximum indeterminate sentence that had been imposed for each of them. In 2014, Matos had been convicted of aggravated assault for which he was initially

sentenced to probation but was then resentenced, following a series of parole violations, to a term of nine to 23 months of incarceration. Matos also accrued three separate convictions for driving under the influence ("DUI") in 2014, 2017, and 2019. He was sentenced to 72 hours to six months of incarceration for the first DUI and 11.5 to 23 months for each of the two subsequent DUIs. With respect to all four of these convictions, Matos was paroled to house arrest after serving a brief period of incarceration.

The Probation Office, applying U.S.S.G. § 4A1.2(b)(1) and Application Note 2, recommended that the district court score the four offenses based on "the maximum sentence imposed"—*i.e.*, the top of the indeterminate imprisonment range—in determining how many criminal history points each conviction warranted. Accordingly, the PSR recommended three points for the sentences in which the top of the indeterminate range exceeded a year and a month and two points for the 2014 DUI conviction because the maximum sentence exceeded 60 days but was less than a year. Matos challenged this application of the Guidelines and argued that the Probation Office should have counted only the time he served in prison.

8

The district court rejected Matos's arguments and adopted the PSR's sentencing calculation as its own. The court then sentenced Matos to 100 months, at the bottom of the Guidelines range of 100 to 125 months, to be followed by five-year and three-year terms of supervised release, to run concurrently. The district court also informed Matos that while on supervised release he must "comply with the standard conditions that have been adopted by this court, and . . . the special conditions that have been attached to the presentence report in advance of sentencing and that have not been objected to or challenged by either party."[3] App'x at 76.

On July 18, 2022, the district court entered its written judgment. Among the fifteen conditions listed as standard conditions are:

> 14. You must provide the probation office with access to any requested financial information.
>
> 15. You must submit your person, and any property, house, residence, vehicle, papers, effects, computer, electronic communications devices, and any data storage devices or media, to search at any time, with or without a warrant, by any federal probation officer, or any other law enforcement officer from whom the Probation Office has requested assistance, with reasonable suspicion concerning a violation of a condition of probation or supervised release or unlawful conduct by you. Any items seized

---

[3] Matos's counsel thereafter requested that the district court read the special conditions attached to the PSR into the record.

9

may be removed to the Probation Office or to the office of their designee for a more thorough examination.

*Id.* at 84. Conditions 14 and 15 are "identical to the conditions listed in General Order #23," *United States v. McAdam*, 165 F.4th 688, 692 (2d Cir. 2026), the standing order in place in the Northern District of New York at the time of Matos's sentencing.[4]

Matos's appellate counsel filed a motion to withdraw pursuant to *Anders v. California*, 386 U.S. 738 (1967), explaining that the appeal-waiver provision of the plea agreement prevented him from challenging Matos's sentence but suggesting that the 19 criminal history points Matos received "grossly overstate[s] the severity of his criminal conduct" and resulted in a substantively unreasonable sentence. Dkt. 30, at 17. Counsel asked the Court to deny the *Anders* motion and direct the parties to brief the case. *Id.* at 18. The government moved to dismiss the appeal or for summary affirmance based on the waiver provision.

This Court denied the *Anders* motion and deferred the government's motion to dismiss. We directed the parties to brief, *inter alia*, "whether a 'miscarriage of justice' exception should apply under which the criminal history issue would

---

[4] On December 15, 2023, the Northern District removed Conditions 14 and 15 from General Order #23. General Order No. 23 (Amended) (N.D.N.Y. Dec. 15, 2023), *available at* https://perma.cc/YH2W-WWN8.

survive waiver" and "whether supervised release conditions 14 and 15 . . . were improperly imposed in the written judgment because they were not referenced in the pre-sentence report or orally pronounced at sentencing." Dkt. 73, at 2.

**DISCUSSION**

On appeal, Matos first argues that the district court committed procedural error in calculating his criminal history category and that it imposed a substantively unreasonable sentence. He next challenges the district court's imposition of Conditions 14 and 15, the two conditions of supervised release that were not included in his PSR or read at sentencing, but were specifically incorporated by reference to a standing order of the Northern District of New York and which appear in the district court's written judgment.

We decline to consider Matos's procedural and substantive reasonableness challenges as they are barred by his valid and enforceable appeal waiver. We also reject Matos's challenge to the two conditions of supervised release. The district court did not err in its pronouncement of Matos's sentence, and the court's error in failing to provide an individualized assessment before imposing the two conditions was harmless.

11

## I.     Appeal Waiver

Matos argues that the district court procedurally erred in calculating his criminal history category by not treating the four occasions on which he was paroled to house arrest as the equivalent of four suspended sentences. Matos contends that if these sentences had properly been treated as suspended, the district court, pursuant to U.S.S.G. § 4A1.2(b)(2), would have considered only the time he actually spent incarcerated (and not the balance of his indeterminate sentence) in calculating his criminal history category. He also argues that the district court imposed a substantively unreasonable sentence by relying on his allegedly inflated criminal history, which "significantly overstates the severity of his prior criminal conduct." Appellant's Br. at 29.

Recognizing that these challenges are foreclosed by the terms of his appeal waiver, Matos asks us to recognize a miscarriage-of-justice exception to our presumption that valid appeal waivers are enforceable and to apply it to reach the merits of his argument. Following *Hunter*, we agree with Matos that "an appeal waiver is unenforceable when it would result in a miscarriage of justice." 146 S. Ct. at 1713. But for the reasons set forth below, the miscarriage-of-justice exception does not apply to Matos because he has not alleged "the kind of egregious error that would bring the judicial system into disrepute" and identifies only a

"standard-fare error[] in misapplying sentencing law that cannot cancel an appeal waiver." *Id.*

\* \* \*

"We review plea agreements, including waivers of the right to appeal, *de novo* and in accordance with general principles of the law of contract." *United States v. Green*, 897 F.3d 443, 447 (2d Cir. 2018). Because plea agreements are not typical contracts, we "temper the application of ordinary contract principles with 'special due process concerns for fairness and the adequacy of procedural safeguards.'" *United States v. Granik*, 386 F.3d 404, 413 (2d Cir. 2004) (quoting *United States v. Altro*, 180 F.3d 372, 375 (2d Cir. 1999)). And "recognizing the government's awesome advantages in bargaining power in construing such agreements, we tend to favor the defendants in cases of doubt." *United States v. Lajeunesse*, 85 F.4th 679, 692 (2d Cir. 2023) (internal quotations marks and citation omitted).

"This Court has repeatedly held that a knowing and voluntary waiver of the right to appeal a sentence is presumptively enforceable." *United States v. Ojeda*, 946 F.3d 622, 629 (2d Cir. 2020). We refuse to enforce such waivers only in certain exceptional circumstances that "occupy a very circumscribed area of our

jurisprudence." *United States v. Borden*, 16 F.4th 351, 354–55 (2d Cir. 2021) (internal quotation marks and citation omitted). Waivers are generally enforced because, if they are not, "the covenant . . . becomes meaningless and would cease to have value as a bargaining chip in the hands of defendants." *United States v. Yemitan*, 70 F.3d 746, 748 (2d Cir. 1995). Waivers have been held unenforceable by this Court only:

> (1) where the waiver was not made knowingly, voluntarily, and competently; (2) where the sentence was based on constitutionally impermissible factors, such as ethnic, racial, or other prohibited biases; (3) where the government breached the agreement containing the waiver; (4) where the district court failed to enunciate any rationale for the defendant's sentence; [or] (5) where the waiver was unsupported by consideration.

*Cook*, 84 F.4th at 122 (internal quotation marks, citations, and alterations omitted).

Matos acknowledges that his appeal waiver suffers from none of the five deficiencies this Court has previously recognized. Instead, he argues that this Court should adopt and apply a "miscarriage of justice" exception. We agree in part. Following the Supreme Court's decision in *Hunter*, we conclude that when a miscarriage of justice would result, "an appeal waiver is unenforceable." 146 S. Ct. at 1713. But we disagree that Matos has shown his entitlement to such relief, for reasons that *Hunter* also makes clear.

14

After approving the majority view among courts of appeals that an appeal waiver is unenforceable in "[e]xtreme cases," where carrying out a waiver might call into question the judicial system's integrity, the Supreme Court in *Hunter* hastened to explain that this "hard-to-meet" standard is inapplicable to alleged sentencing errors that are "ordinary" or "uncertain." *Id.* at 1714. As the Court articulated:

> Th[e] rule, properly understood and applied, sets a high bar: The waiver may be set aside only if the sentence is marred by the kind of egregious error that would bring the judicial system into disrepute. The error must be obvious—not one a judge could reasonably make. And it must be of the type that would undermine public confidence in the judiciary. Sentencing is a complex affair in our criminal justice system, involving for example the detailed calculation of a Sentencing Guidelines range and the mandatory consideration of multiple sentencing factors. In that endeavor, it is unfortunate but inevitable that mistakes will occur. Such standard-fare errors in misapplying sentencing law cannot cancel an appeal waiver. Were they to do so, the utility of waivers in plea negotiations could plummet: such a provision would have less value to the Government, and so might induce fewer concessions to a defendant. And still more to our point, that kind of standard error is not likely to discredit the judiciary's commitment to law.

*Id.* at 1713.

The Court made clear that in rare circumstances—such as if a district court were to impose a sentence "exceeding what the relevant statute allows"—appeal waivers must be set aside, lest "the justice system's basic integrity" be called into

15

question. *Id.* at 1714. But alleged errors in "the detailed calculation of a Sentencing Guidelines range" do not implicate the miscarriage-of-justice limit on the enforceability of appeal waivers. *Id.* at 1713. Indeed, such errors are precisely the sort of "standard-fare errors" contemplated in the plea agreements that contain appeal waivers.[5] *Id.* And our court has routinely enforced appeal waivers in the face of asserted errors of this sort. *See, e.g., United States v. Buissereth*, 638 F.3d 114, 117 (2d Cir. 2011) ("While [the] appeal waiver did not relieve the District Court of its responsibility to follow the procedural requirements related to the imposition of a sentence, [it] does preclude this Court from correcting the errors alleged to have occurred below.").[6]

Matos contends that in those circuits that adopted the miscarriage-of-justice exception before the Supreme Court's decision in *Hunter*, his sentencing challenge would be heard despite his waiver. We disagree. To the contrary, there is

---

[5] Justice Gorsuch's concurrence, joined by Justices Sotomayor and Jackson, suggested "the failure to correct a plain and nonharmless error in calculating an advisory guidelines range" would qualify for the miscarriage-of-justice exception. *Hunter*, 146 S.Ct. at 1720–21 (Gorsuch, J., concurring). But as Justice Kavanaugh's concurrence notes, such a rule "would set a lower bar for the miscarriage-of-justice exception than the Court's opinion does." 146 S. Ct. at 1724 (Kavanaugh, J., concurring). We are bound by the opinion of the Court, and "the Court's opinion of course speaks for itself." *Id.*

[6] *See also United States v. Rodriguez*, 782 F. App'x 51, 53 (2d Cir. 2019) (summary order) ("[A]ny alleged procedural error in the Guidelines calculation is insufficient to undo an appellate waiver where, as here, the sentence imposed comes within the range contemplated by the waiver."); *United States v. Peele*, 500 F. App'x 33, 34–35 (2d Cir. 2012) (summary order) (enforcing a plea waiver even though the district court applied the incorrect edition of the Sentencing Guidelines because the defendant "received the benefit of his bargain").

16

remarkable agreement among the circuits that alleged Guidelines errors fall comfortably within the scope of appeal waivers. *See Sotirion v. United States*, 617 F.3d 27, 38 (1st Cir. 2010) ("This miscalculation of the advisory guidelines range is precisely the kind of 'garden-variety' claim of error contemplated by Sotirion's appellate waiver." (citation omitted)); *United States v. Castro*, 704 F.3d 125, 141–42 (3d Cir. 2013) ("[A] district court's arguably erroneous calculation of a guidelines range 'is precisely the kind of garden variety [sic] claim of error contemplated by [an] appellate waiver.'" (quoting *Sotirion*, 617 F.3d at 38)); *United States v. Nulf*, 978 F.3d 504, 505–07 (7th Cir. 2020) (holding that allegations a district court erred in calculating defendant's offense level do not constitute sufficiently exceptional circumstances to overcome a valid waiver); *United States v. Andis*, 333 F.3d 886, 892 (8th Cir. 2003) ("[A]n allegation that the sentencing judge misapplied the Sentencing Guidelines or abused his or her discretion is not subject to appeal in the face of a valid appeal waiver."); *United States v. Martinez*, 143 F.3d 1266, 1271 (9th Cir. 1998) ("When a plea agreement expressly waives a defendant's right to appeal a sentence, the waiver extends to an appeal based on an incorrect application of the sentencing guidelines."); *United States v. Morales-Figueroa*, No. 22-14278, 2024 WL 33909, at *3 (11th Cir. Jan. 3, 2024) ("[T]here is no exception to

appeal waivers based on . . . [the] belief that the district court committed an error in applying the guidelines."); *United States v. Adams*, 780 F.3d 1182, 1184 (D.C. Cir. 2015) ("[A]n allegation that the sentencing judge misapplied the Sentencing Guidelines or abused his or her discretion is not subject to appeal in the face of a valid appeal waiver." (quoting *Andis*, 333 F.3d at 892)).[7] This is a convincing national consensus, and we agree with our sister circuits.

Matos attempts to distinguish all these cases, arguing that they did "not involve the underlying *interpretation* of a Guideline, but merely whether or not an unambiguous Guideline was misapplied in the particular facts of a defendant's case." Reply Br. at 10. We again disagree. As the cases themselves highlight, asserted errors in application of the Sentencing Guidelines often turn on questions of interpretation. *See, e.g.*, *Sotirion*, 617 F.3d at 38 (finding no miscarriage of justice where "the district judge, defense counsel, and the government, failed to realize that the abuse-of-trust increase was inapplicable" based on the commentary to the

---

[7] *See also United States v. Jones*, 538 F. App'x 285, 287 (4th Cir. 2013) ("Because [the defendant's] challenge regards the district court's calculation of his Guidelines range, there is no miscarriage of justice sufficient to overcome the appellate waiver."); *United States v. Portillo Palencia*, 837 F. App'x 286, 290 (5th Cir. 2020) ("'[R]elatively standard challenge[s]' to a district court's application of the Sentencing Guidelines 'would not fall within a miscarriage-of-justice exception' to circumvent an appeal waiver." (quoting *United States v. Riley*, 381 F. App'x 315, 316 (5th Cir. 2010) (per curiam))); *United States v. Riggins*, 677 F. App'x 268, 271 (6th Cir. 2017) ("[A]n erroneous Guideline calculation is not a miscarriage of justice that will void an appellate waiver."); *United States v. Waller*, 213 F. App'x 696, 697 (10th Cir. 2007) ("[T]o hold that alleged errors under the sentencing guidelines render an appeal waiver unlawful would nullify the waiver based on the very sort of claim it was intended to waive.").

18

Sentencing Guidelines); *Castro*, 704 F.3d at 141 (concluding appellate waiver in plea agreement barred defendant's argument that an "additional adjustment is mandatory if the government moves for it and the other requirements of the provision are met," which was a "question" of first impression in the circuit); *cf. Perkins v. Endicott Johnson Corp.*, 128 F.2d 208, 223 n.60 (2d Cir. 1942), *aff'd*, 317 U.S. 501 (1943) ("There is no need here to go into the question of how 'construction' and 'application' sometimes overlap, i.e., of how 'construction' of a statute is, in part, a function of its 'application.' This is an old problem."). This is not a distinction that transforms a routine Guidelines mistake into a potential miscarriage of justice.

Matos also argues that it would be unfair to enforce his appeal waiver when both he and the government predicted that his criminal history category should be II instead of VI. But "[a] mutual mistake concerning the proper Guidelines range is an insufficient basis to void a plea agreement." *United States v. Riggi*, 649 F.3d 143, 149 (2d Cir. 2011). And this is particularly true where, as here, the plea agreement contains "express provisions with respect to the possibility of a mistaken prediction as to sentencing calculations." *Id.* (quoting *United States v. Rosen*, 409 F.3d 535, 548–49 (2d Cir. 2005)).

19

Matos agreed not to appeal a sentence of 135 months or less, and he received a sentence of 100 months' imprisonment. He claims that absent a purported error in his Guidelines calculation, he might have been sentenced to a shorter term. But this argument falls far short of the sort of extreme claim the Supreme Court in *Hunter* understood to implicate the miscarriage-of-justice limit. This is not a case in which the defendant was sentenced to a term "exceeding what the relevant statute allows – most commonly, a term of years above the maximum prescribed." *Hunter*, 146 S. Ct. at 1714. Matos's sentence was not "imposed without 'some minimum of civilized procedure.'" *Id* (citation omitted). Nor does Matos claim that his sentence was "infected with a blatant constitutional error, such as when a judge takes account of a constitutionally impermissible factor (like race)[.]" *Id*. In short, far from clearing "the high bar a defendant must surmount to overcome an appeal waiver," *id*., Matos points to nothing to undermine the deal he struck with the government. Accordingly, we dismiss Matos's procedural and substantive reasonableness challenges as barred by his appeal waiver.

## II.    Conditions of Supervised Release

Matos next contends that the district court improperly imposed Conditions 14 and 15. He argues that (1) he did not receive proper notice and (2) the district court failed to provide adequate explanation for the imposition of the conditions.

We first conclude that the district court did not violate Matos's right to oral pronouncement of his sentence because the court incorporated the challenged conditions by reference to the Northern District's standing order. We agree with Matos, however, that the district court erred by failing to conduct an individualized assessment prior to imposing Conditions 14 and 15. But we conclude that error was harmless because "the district court's reasoning is 'self-evident in the record.'" *Betts*, 886 F.3d at 202 (quoting *Balon*, 384 F.3d at 41 n.1).

"This Court generally reviews the imposition of supervised release conditions for abuse of discretion." *United States v. Oliveras*, 96 F.4th 298, 304 (2d Cir. 2024) (citation omitted). Where a defendant "did not object when the sentence was imposed, plain error review applies." *United States v. Williams*, 998 F.3d 538, 540 (2d Cir. 2021). But "unobjected-to supervised release conditions are reviewed for plain error *only* if the defendant had a meaningful 'opportunity to object to them.'" *McAdam*, 165 F.4th at 696 (quoting *United States v. Maiorana*, 153 F.4th 306, 310 (2d Cir. 2025)). To be sure, Matos's request that the special conditions of supervised release be read into the record suggests that he had ample opportunity to object to the standard conditions adopted in the Northern District, which were imposed by the district court at the very same time. We need not decide what

21

standard of review properly applies here, however, because Matos's challenge fails either way.

**A**

"A defendant is guaranteed the right to be present at any stage of the criminal proceeding that is critical to its outcome if his presence would contribute to the fairness of the procedure." *Maiorana*, 153 F.4th at 313 (alteration omitted). "The right to presence generally requires that the terms of a defendant's sentence be orally pronounced by the court in the defendant's presence at the sentencing proceeding." *Id.* at 310. In *Maiorana*, the *en banc* Court held "that a sentencing court intending to impose non-mandatory conditions of supervised release . . . must notify the defendant during the sentencing proceeding; if the conditions are not pronounced, they may not later be added to the written judgment." *Id.* at 314. Because "Conditions 14 and 15 are discretionary special conditions," *McAdam*, 165 F.4th at 696, the district court could not impose them absent "prior notice or pronouncement," *Maiorana*, 153 F.4th at 313.

We noted in *Maiorana* that "[a] sentencing court need not read the full text of every condition on the record." *Id.* at 314; *see also McAdam*, 165 F.4th at 695 n.4 (declining to "determine whether the District Court's reference to the 'the standard conditions that have been adopted by this Court' properly 'notif[ied] the

22

defendant during sentencing' of the conditions being imposed." (citations omitted and alterations in original)).  Here, the district court did not violate Matos's right to oral pronouncement because its reference to "the standard conditions that have been adopted by this court," App'x at 76, "specifically incorporate[d] by reference particular conditions that [had] been set forth in writing and made available to the defendant in . . . a notice adopted by the court," *Maiorana*, 153 F.4th at 314.

The right to oral pronouncement stems from a defendant's "due process right 'to be present in his own person whenever his presence has a relation, reasonably substantial, to the fulness of his opportunity to defend against the charge.'"  *Kentucky v. Stincer*, 482 U.S. 730, 745 (1987) (quoting *Snyder v. Massachusetts*, 291 U.S. 97, 105–106 (1934)).  In other words, "notice and opportunity to object are the hallmarks of the pronouncement requirement." *United States v. Martinez*, 15 F.4th 1179, 1181 (5th Cir. 2021).  "By referencing at sentencing a written list, the court affords any defendant who is unfamiliar with the conditions the opportunity to inquire about and challenge them." *United States v. Rodriguez*, 75 F.4th 1231, 1246 (11th Cir. 2023).  And so, here, the district court's reference to General Order #23, a publicly accessible order, "provided [Matos] adequate notice to either object to the standard conditions or to ask the district

court to clarify which conditions it imposed upon him." *United States v. Hayden*, 102 F.4th 368, 374 (6th Cir. 2024).

We thus agree with every other circuit to decide the issue and conclude that "[a] reference to a written list of conditions is enough to afford a defendant the opportunity to challenge the conditions of supervised release, which is all that due process requires." *United States v. Hayden*, 119 F.4th 832, 838 (11th Cir. 2024); *see also Martinez*, 15 F.4th at 1181 ("Given the longstanding existence of the Western District's standing order, defense counsel certainly knew that the standard conditions being imposed were the ones listed in the standing order and included in the judgment form created by the Administrative Office of the United States Courts"); *United States v. Rogers*, 961 F.3d 291, 299 (4th Cir. 2020); *United States v. Matthews*, 54 F.4th 1, 6 n.2 (D.C. Cir. 2022); *Hayden*, 102 F.4th at 374.[8] Accordingly,

---

[8] We note that the Ninth Circuit has suggested that for incorporation by reference to satisfy the pronouncement requirement, the district court must refer to a "*previously provided* list or document." *United States v. Montoya*, 82 F.4th 640, 652 (9th Cir. 2023) (emphasis added). But the court clarified that it did "not exclude any particular method a district court may use in an effort to satisfy the incorporation by reference requirement." *Id.* at 652 n.15; *see also United States v. Avendano-Soto*, 116 F.4th 1063, 1068 n.5 (9th Cir. 2024) (declining to "decide whether General Order 17-18 on its own, without reference in the PSR, would have provided [the defendant] sufficient notice such that the district court's later incorporation by reference to it at sentencing satisfied his right to presence"). We conclude that reference to a publicly-accessible standing order, as here, provides sufficient notice to object or seek clarification, satisfying the oral pronouncement requirement.

24

we hold that the district court did not err in its pronouncement of Conditions 14 and 15.

**B**

Though we reject Matos's argument regarding oral pronouncement, we agree that the district court committed error by failing to conduct an individualized assessment of the need for Conditions 14 and 15. Because Conditions 14 and 15 are not mandatory conditions, "'[the] district court [wa]s required to make an individualized assessment when determining whether to impose [those] special condition[s] of supervised release, and to state on the record the reason[s] for imposing [them]; the failure to do so [wa]s error.'" *McAdam*, 165 F.4th at 697 (alterations in original) (quoting *Betts*, 886 F.3d at 202). As in *McAdam*, the court "made no assessment whatsoever of the need for these conditions." *Id.* "But even in the absence of an explanation, we may still uphold a condition if 'the district court's reasoning is self-evident in the record.' When the reason for a special condition 'is self-evident in the record . . . and the condition[ ] meet[s] the purposes of supervised release,' any error in this respect is harmless." *United States v. Robinson*, 134 F.4th 104, 111 (2d Cir. 2025) (alterations in original) (first quoting *Betts*, 886 F.3d at 202; then quoting *Balon*, 384 F.3d at 41 n.1). Here, as in

*Robinson*, the need for Conditions 14 and 15 is self-evident in the record, so the error was harmless.

With respect to Condition 14, "the Guidelines in effect at the time described a financial disclosure condition as 'recommended' in cases in which the court has imposed 'an order of restitution, forfeiture, or notice to victims, or orders the defendant to pay a fine.'" *McAdam*, 165 F.4th at 697 (quoting U.S.S.G. § 5D1.3(d)(3) (2021 Manual)). Here, the district court imposed a forfeiture order of $112,650. Accordingly, Condition 14 was "justified by the need to ensure that [Matos] complies" with the forfeiture order. *United States v. Lewis*, 125 F.4th 69, 75 (2d Cir. 2025); *see also United States v. Brown*, 402 F.3d 133, 137 (2d Cir. 2005) (noting that "we generally have affirmed special conditions mandating access to financial information only in cases where the sentence included a fine or restitution").

Matos argues that the existence of the forfeiture order was irrelevant because "it is apparent that Mr. Matos has no financial ability to pay any such financial penalty." Appellant's Br. at 47. But, as the government argues, "the purpose of a financial disclosure condition is to monitor whether Matos becomes able to pay and ensure that any assets he acquires in the future are put towards his forfeiture obligation." Appellee's Br. at 60; *see also United States v. Awad*, 598

F.3d 76, 78 (2d Cir. 2010) (explaining that "when 'a defendant lacks the assets to satisfy the forfeiture order at the time of sentencing, the money judgment . . . is effectively an *in personam* judgment in the amount of the forfeiture order'" (citation omitted)).

We likewise find the district court's reasoning for imposing Condition 15 self-evident in the record. At sentencing, the district court highlighted that "Matos has an extensive, uninterrupted criminal history since [he was] approximately 18 years old. Whether he's been on community supervision, incarcerated, he has had uninterrupted and continuous criminal activity which is certainly not overstated by his criminal history score." App'x at 71–72. Matos's offense involved the distribution of large quantities of drugs, and law enforcement seized over 1,000 bags of heroin from his home. Matos had 10 prior convictions, including multiple convictions for violent offenses. Following these convictions, Matos repeatedly violated probation and parole conditions, with the violations extending to dishonest conduct related to his supervision. "And, importantly, he committed the instant offense while under post-release supervision." *Robinson*, 134 F.4th at 111. Specifically, Matos engaged in drug trafficking in New York after absconding from parole in Pennsylvania.

Accordingly, as we have concluded in other cases, "given [Matos's] extensive history of recidivism and his dishonesty with law enforcement officers, we find that the need for this special condition is self-evident on the record." *Robinson*, 134 F.4th at 111; *see also Arguedas*, 134 F.4th at 70 ("Given the severity of Arguedas's conduct and his penchant for re-offending, the need to deter and protect the public is especially acute. These reasons alone justify imposition of [a search condition] in its entirety."); *cf. McAdam*, 165 F.4th at 698 (declining to find justification for condition self-evident in the record where there was no "indication that McAdam pose[d] a particular risk to reoffend"). In light of Matos's history, Condition 15 "operates as an important means for enforcing the court's other conditions and enabling the detection of evidence of supervised release violations." *Robinson*, 134 F.4th at 112. We thus conclude that the district court's reasons for imposing Conditions 14 and 15 "are 'self-evident in the record,' and that those conditions are reasonably related to the pertinent sentencing factors." *Arguedas*, 134 F.4th at 70 (quoting *Betts*, 886 F.3d at 202).

## CONCLUSION

In sum, we conclude that Matos's challenges to his prison sentence are barred by his valid appeal waiver. We also conclude that the district court did not err in its pronouncement of Conditions 14 and 15 and committed harmless error

28

in failing to conduct an individualized assessment prior to imposing the conditions. Accordingly, we **DISMISS** in part and **AFFIRM** the judgment of the district court.